1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

DAVID EDWARD HERNANDEZ,

           Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of Social
Security,

          Defendant.

Case No.: 1:20-cv-00041-BAM

**ORDER REGARDING PLAINTIFF'S
SOCIAL SECURITY COMPLAINT**

## INTRODUCTION

Plaintiff David Edward Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decisions of the Administrative Law Judge ("ALJ") and the Appeals Council to be supported by substantial evidence

---

[1]     The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. Nos. 6, 8, 21.)

in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits for the period of October 15, 2011 to August 4, 2015.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed applications for disability insurance benefits and supplemental security income on December 5, 2011. AR 172-75, 176-81.[2] Plaintiff alleged that he became disabled on October 15, 2011, due to lower back pain, heart problems, gout, chronic pain, and sleep apnea. AR 196. Plaintiff's application was denied initially and on reconsideration. AR 76-77, 120-27. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Tamia N. Gordon held a hearing on November 6, 2013, and issued an order denying benefits on January 17, 2014. AR 21-31. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. Plaintiff then appealed the decision to United States District Court for the Northern District of California. On March 30, 2017, the U.S. District Court reversed the Commissioner's final decision and remanded for further proceedings. AR 1168-77.

While the civil action was pending, Plaintiff filed a new application for supplemental social security income on August 4, 2015. AR 1184. The second application was granted with a finding of disability on August 4, 2015. AR 1184. The Appeals Council then permitted the ALJ on remand to potentially reopen and revise the disability determination. AR 1184.

On remand, a second ALJ, Ruxanna Meyer, held a rehearing on September 13, 2017, and issued an order denying benefits on July 18, 2018. AR 1093-134, 1187-1203. The ALJ declined to reopen the August 4, 2015 application. AR 1190-91. As to the original application, the ALJ issued a decision for the unadjudicated period between October 15, 2011 and August 4, 2015 (the period between the original onset date and the second application). AR 1190-203. Plaintiff requested review and the Appeals Council issued a decision on November 12, 2019. AAR 1085-92. The Appeals Council made some findings but ultimately concluded Plaintiff was not disabled from October 15, 2011 to August 3, 2015. AR 1089-92. This appeal followed.

///

---

[2]       References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

**Hearing Testimony**

The ALJ held a hearing on September 13, 2017, in Fresno, California. Plaintiff appeared with her attorney, Robert Ishikawa. Cheryl Chandler, an impartial vocational expert, also appeared. AR 1093.

Plaintiff testified that he lives in an assisted living facility for disabled persons. AR 1099. Plaintiff further testified that from October 2011 to the time of the hearing, he gained about 130 pounds. AR 1099-100. During the period at issue (October 2011 to August 2015), Plaintiff gained about 115-120 pounds, which he attributed to taking prednisone. AR 1100. Prednisone is prescribed to Plaintiff for blood clots. AR 1100.

Plaintiff testified that he is able to drive and has disabled parking. AR 1101. He has been able to drive for the year prior to the hearing. AR 1101. Prior to obtaining a vehicle last year, Plaintiff used disabled persons transportation services and public transportation to get around. AR 1102. Plaintiff further testified that he has his GED and did some vocational training. AR 1102.

Plaintiff testified that he last worked in December 2008. AR 1102. He was working in machinery and tools and was walking and standing approximately six hours a day, was lifting about 50 pounds at the heaviest and 10 pounds at the lightest, and supervised 25 people. AR 1102. Plaintiff mostly worked in a jobsite foreman position. AR 1102. Plaintiff was then laid off from that position. AR 1103-04. Plaintiff further testified that he attempted to find work elsewhere but in October 2011 he fell off a ladder and injured himself. AR 1105-06. Plaintiff also testified that he worked for a furniture company where he was constructing furniture and installing furniture. AR 1122.

In response to questions by his attorney, Plaintiff testified that he started using a cane after he had a stent put in in December 2011. AR 1107. The use of a cane was prescribed. AR 1107. Plaintiff explained that after his stent was put in, he had blood clots in his legs and lungs, and had bad knees, so he was prescribed the cane to avoid falling. AR 1108. After receiving the stent, Plaintiff would get chest pains for once or twice a month for a couple of days at a time. AR 1108. He would be hospitalized for the pain on these occasions. AR 1108. The chest pains would occur upon exertion or activity. AR 1108. Plaintiff further testified that between 2011 and 2013 he would need to have his knees elevated at least half the day. AR 1109.

Plaintiff also testified that he has back problems at the L4-L5 and C3 vertebrae. AR 1110. Plaintiff testified that the pain is constant and chronic. AR 1110. Plaintiff also testified that has sciatica pain a couple times a day for a few minutes at a time, where the pain shoots down his leg to his feet. AR 1111.

Plaintiff further testified that he was diagnosed with diabetes in 2014 and takes metformin and insulin. AR 1111. Plaintiff testified that activity aggravated his back, particularly standing up, walking, and sitting down. AR 1112. Plaintiff also testified that he has pain on the C3 vertebrae that is aggravated by looking up, and sometimes to the left. AR 1113. Plaintiff testified that he has neuropathy as a result of his diabetes. AR 1113. Plaintiff also testified that the pain he experiences affects his ability to stay focused and pay attention. AR 1114.

Plaintiff further testified that he has sleep apnea which reduces his sleep to about 2-3 hours a night. AR 1114. Plaintiff uses ice and pain medication to help alleviate the pain. AR 1115-16. Physical therapy was not helpful because Plaintiff was in too much pain. AR 1116. Plaintiff further testified that his depression makes him shake and feel useless. AR 1116-17. Plaintiff's depression causes problems with concentration and pain intensity. AR 1117.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Cheryl Chandler.  The VE characterized Plaintiff's past work as light but performed at the medium level, SVP 7, and semiskilled, heavy, SVP 4. AR 1121, 1122. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and past work experience.  The ALJ also asked the VE to assume an individual who could lift or carry 20 pounds occasionally, lift 10 pounds frequently, stand for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, perform occasional climbing of stairs and ramps, occasional stooping, kneeling, and crawling, frequent balancing and crouching, is to avoid ladders, ropes, and scaffolds as well as avoiding concentrated exposure to hazards such as moving machinery and unprotected heights. AR 1124-25. The VE testified that there would not be work in the national economy with transferrable skills from Plaintiff's past work. AR 1125. The VE further testified that he could perform jobs at the light, unskilled level such as salesperson, general hardware, cashier, and counter clerk that such an individual could perform. AR 1125-27.

For the second hypothetical, the ALJ asked the VE to take hypothetical one but that the individual could only stand and walk for a total of 4 hours in an 8-hour workday. AR 1127. The VE testified that there would be jobs in the national economy including cashier, counter clerks, and courier. AR 1128.

For the third hypothetical, the ALJ asked the VE to take hypothetical two but that individual would be able to perform simple, routine tasks. AR 69. The VE testified that there would still remain jobs in the national economy that such an individual could perform. AR 69. The VE further testified that due to the change in age category, as experienced by Plaintiff during the relevant time, the following jobs at the sedentary level would also be available, ticket counter worker, charge accounts clerk, and assembler. AR 1130.

For the fourth hypothetical, the ALJ asked the VE to assume an individual that can lift or carry 20 pounds occasionally, lift 10 pounds frequently, sit or stand but not for extended periods of time defined as more than two hours, perform work that does not involve driving, climbing ladders, or using power equipment, perform work that does not involve repetitive stooping defined as occasional stooping, and would require a job that permits a period of sitting after 15 minutes of standing or walking. AR 1130-31. The VE testified that such an individual would not be able to work. AR 1131.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 1191. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of October 15, 2011, to the date last insured, December 21, 2013. AR 1193. The ALJ identified coronary artery disease status post coronary angioplasty with stent placement, morbid obesity, degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the right knee with meniscal tear, history of deep vein thrombosis, secondary to anticoagulation therapy, diabetes mellitus type II,

and sleep apnea with CPAP as severe impairments. AR 1193. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 1194.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry up to 20 pounds occasionally, and 10 pounds frequently, stand and walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday, occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl, could not complete work that involves climbing ladders, ropes, or scaffolds, concentrated exposure to hazards such as heavy machinery, or unprotected heights. AR 1194-201. With this RFC, the ALJ found that Plaintiff could not perform his past relevant work as an assistant construction superintendent or furniture assembler installer. AR 1201. Alternatively, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as cashier, counter clerk, and courier. AR 1202-03. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 1203.

**The Appeals Council's Decision**

On November 12, 2019, the Appeals Council ("AC") issued a decision finding that Plaintiff was not disabled for the period of October 15, 2011 thorough August 4, 2015. AR 1092. The AC adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Regulations, Social Security Rulings and Acquiescence Rulings, issues in the case and evidentiary facts, as applicable." AR 1089. However, the AC declined to adopt the ALJ's findings regarding Plaintiff's second application. AR 1089. Specifically, the AC declined to accept the ALJ's finding that Plaintiff was not disabled through the decision date of July 18, 2018, where under Plaintiff's second application Plaintiff was found to be disabled beginning August 4, 2015. AR 1089. Otherwise, the AC adopted the ALJ's findings regarding whether Plaintiff was disabled. AR 1090.

The AC, however, did not agree with the ALJ's evaluation of treating source, Anupama Poliyedath, M.D. AR 1090. The ALJ accorded Dr. Poliyedath's opinion discounted weight because it was temporary and did not meet the 12-month durational requirement and the opinion was unsupported by the medical records. AR 1090. Notwithstanding, the AC accorded the opinion partial

but not controlling weight. AR 1091. The AC's decision is otherwise an adoption of the ALJ's decision.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

**A.  The ALJ Did Not Err in Evaluating the Opinion of Dr. Birgit Siekerkotte**

Plaintiff first argues that the ALJ erred in evaluating the opinion of consultative examiner, Birgit Siekerkotte, M.D. (Doc. No. 17 at 6.)

On January 13, 2016, Dr. Siekerkotte completed a consultative evaluation.  Plaintiff complained of low back pain, knee pain bilaterally, diabetes neuropathy, lower extremity edema and discoloration, status post PE, status post DVT, status post myocardial infraction, congestive heart failure, COPD, and depression. AR 1326. As to his daily activities, Plaintiff reported that he needs help washing his feet and dressing, denies being able to sweep, mop, vacuum, do dishes, do laundry, shop, or cook. AR 1327. Plaintiff also reported that he spends most of his days watching tv and reading. AR 1327.

On examination, Dr. Siekerkotte observed that Plaintiff was morbidly obese, had some discoloration on his lower legs, walks with a limp and is unbale to stand on toes and heels. AR 1329. Plaintiff also reported that he uses a two-wheel walker and cane at home, as well as a CPAP machine, oxygen concentrator, and accu-check. AR 1329. Dr. Siekerkotte opined that Plaintiff would have a maximum standing/walking capacity of less than two hours, no limitations on sitting, requires the assistive devices of a cane, two-wheel walker, CPCP, oxygen concentrator and accu-check, could lift/carry less than 10 pounds occasionally and frequently, could never climb ladders, could occasionally climb stairs, stoop, crouch, and crawl, could occasionally reach overhead, reaching, and handling, and could limitedly work at heights, around heavy machinery, and around dust, fumes, and gases. AR 1330-31.

The ALJ assigned discounted weight to Dr. Siekerkotte's opinion as it was rendered 4 months after the relevant period. AR 1199. The ALJ also discounted the opinion because the medical evidence did not support that a cane was medically necessary for the durational requirement or that it was

---

[3]      The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

prescribed by an acceptable medical source. AR 1199. Plaintiff asserts that the ALJ did not provide sufficient reasons for discounting Dr. Siekerkotte's opinion. The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id*. Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id*. If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id*.

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id*. at 830-31.  The opinion of a non-examining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician.  *Id*. at 831.

The ALJ first discounted Dr. Siekerkotte's opinion because it was rendered 4 months after the relevant period. AR 1199. Medical evaluations made after the expiration of the claimant's insured period is relevant to the pre-expiration condition. *Lester,* 81 F.3d at 833; *Smith v. Bowen*, 849 F.2d 1222, 1224-25 (9th Cir. 1988) (holding that three doctors' medical evaluations rendered three to nine years after the expiration of the insured status were relevant when evaluating the pre-expiration condition); *Hartman v. Bowen*, 636 F. Supp. 129, 132 (N.D. Cal. 1986) (explaining although plaintiff has to establish that disability existed prior to the expiration date, she is limited to evidence that existed pre-expiration); *Garcia v. Saul,* 2020 WL 4882499 at *15 (S.D. Cal. August 20, 2020) (finding medical opinion relevant where rendered six days after expiration of insured period). Here, the period of disability at issue ends on August 4, 2015 and Dr. Siekerkotte's opinion was rendered on January 13, 2016. The ALJ considered the opinion, but partially discounted the opinion based on the date the

opinion was rendered. However, the ALJ also accorded the opinion discounted weight based on the medical evidence. Therefore, the ALJ's reliance on the opinion issued after the relevant period is not error.

In considering the opinion, the ALJ discounted Dr. Siekerkotte's opinion because it was not supported by the medical evidence. Specifically, the ALJ discounted Dr. Siekerkotte's opinion as to the need of a cane. AR 1199. An ALJ may reject the opinion of the examining physician where the limitations imposed are inconsistent with objective evidence in the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding that ALJ provided specific and legitimate reason for discounting physician's opinion where opinion was inconsistent with medical records); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). According to the objective medical record, and as identified by the ALJ, a progress note rendered in July 2015 found Plaintiff has no acute process and was in stable condition. AR 1199. Further, the ALJ identified that the last pain management progress notes from July 2015 stated that Plaintiff's pain was moderately well controlled, and exercise was encouraged. AR 1199. Additionally, a June 2015 neurological examination found that Plaintiff's motor abilities were grossly normal, and all extremities moved well. AR 1199.

In March 2012, consultative examiner Rustom Damania, M.D., examined Plaintiff. AR 381-86. Dr. Damania noted that Plaintiff had normal range of motion, straight leg test negative at 90 degrees, and Plaintiff had normal gait. AR 384. Dr. Damania opined that Plaintiff could lift up to 20 pounds occasionally, 10 pounds frequently, and could sit, walk, and stand with no restriction. AR 386. Dr. Damania also opined that no assistive device was necessary for ambulation. AR 386. The ALJ accorded the opinion great weight as it was consistent with the examination notes and observations, including noting susceptibility of the diabetes to control by diet. AR 1198.

State agency examiner A. Nasrabadi, M.D., opined that Plaintiff retained the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and walk for 4 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, was precluded form climbing ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, was capable of

occasionally balancing, stooping, kneeling, crouching, and crawling, but should avoid concentrated exposure to hazards such as heavy machinery and heights. AR 103-05. The opinion was adopted by Dr. J. Linder in December 2012. AR 103-05. The ALJ accorded the opinion great weight as it was in accord with the overall medical evidence of the relevant period. AR 1199.

Dr. Poliyedath at Internal Medicine completed an evaluation of Plaintiff in January 2013. AR 794-96. The evaluation indicated that Plaintiff was unable to drive, climb ladders, use power equipment, engage in repetitive bending or lifting, or stand or walk less than 15 minutes in an hour. AR 795-96. The ALJ found that the opinion appeared to be based on the Plaintiff's subjective complaints, rather than on medical restrictions associated with orthopedic, coronary, or endocrinal impairments. AR 1198.

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). While it is true that an ALJ is "not qualified to interpret raw medical data in functional terms," *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008), the ALJ is not precluded from making an RFC finding that differs from assessments contained in medical source statements. Indeed, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Holcomb v. Comm'r Soc. Sec.*, No. 2:17-cv-02268-KJM-CKD, 2019 WL 176266, at *4 (E.D. Cal. Jan. 11, 2019) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

Here, the ALJ cited medical evidence and treatment records to support her RFC finding that Plaintiff retained the residual functional capacity to lift and carry up to 20 pounds occasionally, and 10 pounds frequently, stand and walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday, occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl, could not complete work that involves climbing ladders, ropes, or scaffolds, concentrated exposure to hazards such as heavy machinery, or unprotected heights. AR 1194-201. Plaintiff does not argue that the RFC is not supported by the medical evidence but instead takes issue with the ALJ's

determination as to the lift/carry capacity of Plaintiff. However, an ALJ is not precluded from making an RFC finding that differs from assessments contained in medical source statements. "The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Holcomb*, No. 2:17-cv-02268-KJM-CKD, 2019 WL 176266, at *4. The ALJ found that Plaintiff had the RFC to lift 10 pounds frequently. Dr. Siekerkotte opined Plaintiff could lift/carry less than 10 pounds occasionally and frequently. Dr. Siekerkotte's opinion also noted that Plaintiff has no sensory defects, with normal sensation and reflex, muscle strength, and tone. AR 1329. The ALJ also noted the same limitations in her opinion. The ALJ discussed all the relevant medical evidence on the record and determined that Plaintiff retained the capacity to lift 10 pounds frequently. The ALJ articulated legitimate reasons for according Dr. Siekerkotte's opinion less weight.

For these reasons, the Court finds that the ALJ did not err in evaluating the opinion of Dr. Siekerkotte and assigning it discounted weight.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff David Edward Hernandez.


IT IS SO ORDERED.

Dated:   **March 31, 2021**              ___/s/ *Barbara A. McAuliffe*___
                                             UNITED STATES MAGISTRATE JUDGE

12